**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**United States**

    **v.**                                          Case No. 18-cr-126-PB
                                              Opinion No. 2019 DNH 125

**Misael Herrera-Fuentes**

## **O R D E R**

The United States charged Misael Herrera-Fuentes with one count of violating 8 U.S.C. § 1326(a), the illegal reentry statute. Herrera-Fuentes responded with supplemental motions to dismiss that collaterally attack the immigration court order the government relies on to prove that he had previously been removed from the United States. Because I conclude that Herrera-Fuentes cannot collaterally attack the immigration court order, I deny his motions.

### **I. FACTUAL BACKGROUND**

Herrera-Fuentes, a Honduran national, has been removed twice before. In September 2007, the Department of Homeland Security ("DHS") found him living in Manchester, New Hampshire, and removed him to Honduras. In October 2012, he was detained after unlawfully entering the United States near Eagle Pass, Texas. His removal order was reinstated and he was again removed.

The details surrounding Herrera-Fuentes' first removal are central to this case. On September 13, 2007, the Patrol Agent-in-Charge served Herrera-Fuentes with a Notice to Appear before an immigration judge. See Doc. No. 11-1. That Notice instructed him to appear at the Ribicoff Federal Building in Hartford, Connecticut "on a date to be set at a time to be set." Doc. No. 11-1. On September 24, Herrera-Fuentes, who was then in detention, received a "Notice of Hearing in Removal Proceedings" specifying that his removal hearing would be held "on Sep 26, 2007 at 9:00 A.M." Doc. No. 11-2. Herrera-Fuentes appeared at the hearing via video teleconference. Following the hearing, the Executive Office for Immigration Review ordered his removal ("2007 Removal Order"). See Doc. No. 11-3. He did not challenge the order and he was later removed.

In August 2018, Herrera-Fuentes was indicted in this court for illegal reentry. See Doc. No. 1. He responded with a motion to dismiss claiming that the 2007 Removal Order was improper because his Notice to Appear did not specify the date and time of his removal hearing. I denied his motion from the bench because Herrera-Fuentes was served with a Notice of Hearing that gave him advance notice of when the hearing would be held. On January 24, 2019, he entered a conditional guilty plea preserving his right to appeal from the denial of his motion to dismiss. On March 29 and May 24, 2019, he filed

supplemental motions to dismiss providing new factual and legal support for his original motion.  See Doc. Nos. 32, 38.  Those motions are before the court.

## II. LEGAL BACKGROUND

An illegal reentry charge requires proof that the defendant "(1) is an alien, (2) was previously deported, and (3) thereafter entered, or attempted to enter, the United States without permission." United States v. Contreras Palacios, 492 F.3d 39, 42 (1st Cir. 2007).  Herrera-Fuentes targets the second element of the crime by collaterally attacking the 2007 Removal Order.  As he sees it, the immigration court lacked jurisdiction over him because his original Notice to Appear did not specify the date and time of his removal hearing as is required by 8 U.S.C. § 1229(a).  Accordingly, he contends that the 2007 Removal Order was unlawful and cannot be used to satisfy the second element of an illegal reentry prosecution.  This apparently simple argument is a straight thread pulled from an entangled skein.  Before I address it, I describe the law on which it is based.

### A. Collateral Attacks on Orders

The law has not always permitted collateral attacks on removal orders.  But in United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court held that the due process clause entitles an alien to collaterally challenge a removal proceeding

during an illegal reentry prosecution if "defects in [the] administrative proceedings foreclose[d] judicial review of that proceeding." See id. at 838. Because the defendants in Mendoza-Lopez had been denied their right to appeal their removal orders, the Court concluded that the defendants' motions to dismiss must be granted. See id. at 842.

Congress responded to the Mendoza-Lopez decision some years later. In the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132 (Apr. 24, 1996), 110 Stat. 1214, Congress amended the Immigration and Nationality Act ("INA") by adding a new subsection to § 1326:

> (d) In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
>> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). A proceeding is fundamentally unfair under § 1326(d) only if there is "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006) (quoting United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997)).

4

Herrera-Fuentes does not claim that the result of the 2007 removal proceeding would have been different if his Notice to Appear had specified the date and time of his removal hearing. Instead, he claims that his challenge is not subject to § 1326(d) at all because the alleged deficiency in his Notice to Appear is a jurisdictional defect that can always be collaterally challenged during an illegal reentry prosecution.

Herrera-Fuentes bases his jurisdictional challenge on the Supreme Court's recent decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), which I turn to next.

**B. Pereira and the "Notice to Appear"**

Nonpermanent residents who are subject to removal and have lived in the United States for ten consecutive years may petition the Attorney General of the United States for a discretionary cancellation of removal. 8 U.S.C. § 1229b(b)(1). The statute governing cancellations of removal also sets forth a "stop-time rule" which provides that continuous physical presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)." See 8 U.S.C. § 1229b(d)(1)(A). Section 1229(a), in turn, requires that "written notice (in this section referred to as a 'notice to appear') shall be given" to the alien. 8 U.S.C. § 1229(a)(1). That written notice must "specify[] . . . [t]he time and place at which the proceedings will be held." 8 U.S.C. §§ 1229(a)(1);

5

1229(a)(1)(G)(i).  The Court held in Pereira that a Notice to Appear that stated the hearing would be held "on a date to be set at a time to be set," Pereira, 138 S. Ct. at 2112, was "not a notice to appear under section 1229(a)" and therefore did not trigger the stop-time rule.  See id. at 2114 (quoting 8 U.S.C. § 1229b(d)(1)(A)).

The Notice to Appear that DHS served on Herrera-Fuentes contained the same time and date deficiencies as the Notice to Appear in Pereira.  Herrera-Fuentes, however, is not petitioning the Attorney General for cancellation of removal; he is moving to dismiss his indictment.  How, then, could Pereira affect this case?  Defendant maintains that because his so-called "Notice to Appear" was not actually a Notice to Appear at all (just as in Pereira), the immigration court rendered a judgment against him on a matter that it had no jurisdiction to decide.

### III. ANALYSIS

#### A. Pereira Defect

Herrera-Fuentes argues that he is entitled to press his collateral challenge to the 2007 Removal Order without complying with § 1326(d) because the immigration court never acquired jurisdiction to issue the order.  This argument is based on the premise that a Notice to Appear cannot confer jurisdiction on an immigration court unless it specifies the date and time of the removal hearing as is required by Pereira.  Because I determine

that Pereira establishes a claim-processing rule rather than a jurisdictional requirement, I reject Herrera-Fuentes' argument.

Although courts have addressed this question in different ways,[1] I find that the Seventh Circuit's recent decision in Ortiz-Santiago v. Barr, 924 F.3d 956, 963 (7th Cir. 2019), reh'g denied (July 18, 2019), neatly describes why a Pereira error is not jurisdictional. As that court notes, the relevant statutory provision, 8 U.S.C. § 1229(a)(1)(G)(i)), makes no mention of jurisdiction. See Ortiz-Santiago, 924 F.3d at 963. Indeed, the entire INA omits reference to the jurisdiction of the immigration courts. See 8 U.S.C. § 1101, et seq. Statutory text must provide a "clear indication" that a rule is meant to be jurisdictional. See Henderson v. Shinseki, 562 U.S. 428, 436 (2011). This statute provides no indication at all.

---

[1] See Banegas Gomez v. Barr, 922 F.3d 101, 112 (2d Cir. 2019) (holding that jurisdiction vests in the immigration court when a Pereira violation is cured); Santos-Santos v. Barr, 917 F.3d 486, 491 (6th Cir. 2019) (holding that a cured Pereira violation vests jurisdiction, and that alternatively, a notice to appear itself vests jurisdiction even if it does not specify the date and time of the hearing); Karingithi v. Whitaker, 913 F.3d 1158, 1159 (9th Cir. 2019) (agreeing with Second Circuit that jurisdiction vests when a defective notice is cured). The few district court judgments that have found a jurisdictional error have fared poorly. See, e.g., United States v. Zapata-Cortinas, No. SA-18-CR-00343-OLG, 2018 WL 4770868, at *1 (W.D. Tex. Oct. 2, 2018), vacated (Oct. 17, 2018), opinion superseded on reconsideration, 351 F. Supp. 3d 1006 (W.D. Tex. 2018); United States v. Rojas Osorio, No. 17-CR-00507-LHK, 2019 WL 235042, (N.D. Cal. Jan. 16, 2019), order vacated on reconsideration sub nom. United States v. Rojas-Osorio, 381 F. Supp. 3d 1216 (N.D. Cal. 2019).

7

Nor does Pereira support the view that the defect is jurisdictional. "[T]he Supreme Court made no mention of jurisdiction in Pereira." See Ortiz-Santiago, 924 F.3d at 963. "That makes sense: there is no reason why the Court needed to do so. And had it found a lack of jurisdiction, it would not have remanded for further proceedings." Id.

As the Seventh Circuit succinctly explained in concluding that Pereira establishes a claim-processing rule:

> [W]e see a statute (8 U.S.C. § 1229(a)(1)(G)(i)) that says nothing about the agency's jurisdiction. It simply sets out the information that must be included in a Notice to Appear. That does not mean that the statute is unimportant or can be ignored. It simply means that an aggrieved party can forfeit any objection she has by failing to raise it at the right time.

Id. (citation omitted).

A party wishing to challenge a claim-processing defect must timely object, see Eberhart v. United States, 546 U.S. 12, 19, (2005) (per curiam), or show actual prejudice. See Pereira, 138 S. Ct. at 2112. Here, Herrera-Fuentes was served with a Notice of Hearing that gave him advance notice of the date and time of his hearing and he has not argued that he was prejudiced by the deficient Notice to Appear. Cf. Ortiz-Santiago, 924 F.3d at 964-65 ("This is not a case in which the Notice of Hearing never reached him, or it came so quickly that he had trouble preparing for the hearing, or any other discernible prejudice occurred.").

Without any actual prejudice, he cannot say that the entry of his order was "fundamentally unfair." See 8 U.S.C. § 1326(d)(3).

Because the Pereira defect at issue here did not deprive the immigration court of jurisdiction, Herrera-Fuentes is subject to the collateral review requirements of 8 U.S.C. § 1326(d). And because he cannot show that his proceedings were fundamentally unfair, he cannot satisfy those requirements.

**B. Immigration Court Defects**

Herrera-Fuentes alternatively argues that the immigration judge's failure to adequately advise him of his appellate rights rendered his removal fundamentally unfair.[2] This argument fails.

Herrera-Fuentes did not exhaust his administrative remedies with respect to this argument and was not denied the opportunity for judicial review. He knowingly failed to appeal his decision to the Board of Immigration Appeals. See United States v. DeLeon, 444 F.3d 41, 50 (1st Cir. 2006) (advising that "ordinarily, the § 1326(d) analysis should start with the first ground"). The immigration judge advised Herrera-Fuentes of his right to appeal on three occasions, and to the question "Do you

---

[2] In two sentences, Herrera-Fuentes contends that the immigration judge's failure to advise him of pro bono legal services rendered the proceeding fundamentally unfair. He cites no caselaw supporting this proposition, however, and arguments raised in a cursory fashion are thereby waived. See United States v. De Jesus-Viera, 655 F.3d 52, 58 n.4 (1st Cir. 2011).

9

accept my decision as final or you want to appeal it?" he responded "No, I accept." Doc. No. 31-1 at 8-9. "[I]t is quite clear that Congress has, particularly in the immigration laws, placed a premium on exhaustion of agency remedies," and the failure to do so precludes a collateral attack. DeLeon, 444 F.3d at 50 n.7.

Moreover, Herrera-Fuentes makes no argument and provides no evidence that the result of the removal proceeding would have been affected by appeal. In addition to showing that he exhausted available administrative remedies and that he was improperly deprived of the opportunity for judicial review, Herrera-Fuentes must show that "the entry of the order was fundamentally unfair." See 8 U.S.C. § 1326(d). That means demonstrating prejudice, and such a showing requires "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." United States v. Soto-Mateo, 799 F.3d 117, 124 (1st Cir. 2015) (quoting Luna, 436 F. 3d at 317). Herrera-Fuentes has not even suggested how the result of his proceeding would have been different and therefore has not shown that "the entry of the order was fundamentally unfair." See 8 U.S.C. § 1326(d).

## IV. CONCLUSION

Herrera-Fuentes has not demonstrated that his removal was fundamentally unfair. I deny his supplemental motions to dismiss the indictment (Doc. Nos. 32 & 38).

**SO ORDERED.**

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

August 7, 2019

cc: Dorothy E. Graham, Esq.
Alfred J.T. Rubega, Esq.
Helen W. Fitzgibbon, Esq.